**Cummins & White, LLP**
Iman Reza (SBN 245094)
ireza@cwlawyers.com
2424 S.E. Bristol, Suite 300
Newport Beach, CA 92660-0764
Tel: 949-852-1800
Fax: 949-852-8510

**LightGabler**
Jonathan Fraser Light (State Bar #101049)
Darth K. Vaughn (State Bar #253276)
Brier Miron Setlur (State Bar #273335)
760 Paseo Camarillo, Suite 300
Camarillo, California 93010
(805) 248-7208
(805) 248-7209 (fax)
jlight@lightgablerlaw.com
dvaughn@lightgablerlaw.com

Attorneys for Defendants
Natural Products Association and
Daniel Fabricant

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT WEICKERT,<br><br>       Plaintiff,<br><br>     v.<br><br>NATURAL PRODUCTS ASSOCIATION, DANIEL FABRICANT and DOES 1-25,<br><br>       Defendants. | Case No. 2:15-cv-9874-JFW-JEM<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND TO STRIKE**<br><br>**Date:**       **February 22, 2016**<br>**Time:**       **1:30 p.m.**<br>**Courtroom:**   **16** |

///

///

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that, on February 22, 2016 at 1:30 p.m., or as soon as the matter may be heard, at the above-referenced court located at 312 N. Spring Street, Los Angeles, California, Courtroom 16, before the Honorable John F. Walter, Defendants, NATURAL PRODUCTS ASSOCIATION and DANIEL FABRICANT, (hereinafter referred to as "Defendants") will move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the claims for intentional infliction of emotional distress, negligent hiring and retention, and hostile work environment. Defendants will further move to strike paragraph 14 of the complaint pursuant to Fed. R. Civ. P. 12(f).

The Motion will be based on this Notice and Motion, the accompanying Memorandum of Points and Authorities and upon such oral argument as may be presented at the hearing of this matter.

Dated: January 21, 2016            Respectfully submitted,

Cummins and White LLP

By:  /s/ Iman Reza
     Iman Reza
Attorneys for Defendants Natural Products
Association and Daniel Fabricant

Of Counsel:

Richard J Oparil (admitted Pro Hac Vice)
rjoparil@pbnlaw.com
Porzio, Bromberg & Newman P.C.
1200 New Hampshire Ave. NW, Suite 710
Washington, DC 20036
Tel: 202-517-1888
Fax: 202-517-6322

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 1

ARGUMENT .......................................................................................................... 6

I.     WEICKERT'S COMPLAINT DOES NOT STATE A CLAIM FOR
       INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ................... 6

II.    WEICKERT'S NEGLIGENT HIRING AND RETENTION CLAIM IS
       ALSO PREEMPTED BY CALIFORNIA LABOR LAW. ......................... 10

III.   WEICKERT'S COMPLAINT DOES NOT STATE A CLAIM FOR
       HOSTILE WORK ENVIRONMENT............................................................ 11

IV.    PARAGRAPH 14 OF THE COMPLAINT SHOULD BE STRICKEN
       UNDER RULE 12(f)...................................................................................... 14

CONCLUSION...................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826 (2001) .......................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 6

*Bush v. Trendwest Resorts, Inc.*, 2001 WL 1469062, *9 (Cal. Ct. App.
    Nov. 19, 2001) ............................................................................................ 10, 12

*Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) ..................................... 8

*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 18
    Cal. Rptr. 2d 692 (1993) .......................................................................... 10

*Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148 (1987) ...................... 7, 10

*Fermino v. Fedco, Inc.*, 7 Cal. 4th 701 (1994) ....................................................... 7

*Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590,
    611 262 Cal. Rptr. 842 (1989) ......................................................... 11, 12, 13

*Girard v. Ball*, 125 Cal. App. 3d 772, 787-88 (1981) ............................................. 9

*Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) ..................................................... 8

*Jimena v. Standish*, 504 Fed. Appx. 632, 634, 2013 WL 223131, *1
    (9th Cir. Jan. 17, 2013) ...................................................................................... 6

*Lewis v. Ollison*, 571 F.Supp.2d 1162 (2008) ....................................................... 1

*Livitsanos v. Superior Court*, 2 Cal. 4th 744, 7 Cal. Rptr. 2d 808, 815 (1992) ........ 7

*Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264 (2006) .............. 11

*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876 ...................... 8

*McCoy v. Pacific Maritime Assn.*, 216 Cal. App. 4th 283, 293,
    158 Cal. Rptr. 851 (2013) ....................................................................... 11

*Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1252 (1988) ........................... 8, 10

*Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994) ........................................... 1

*Nidds v. Schindler Elevator Corp.*, 1994 WL 675719, *8 (N.D. Cal.
    Nov. 17, 1994) ................................................................................................. 7

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) .................. 8, 9

1462781

ii

*Shinde v. Nithyananda Foundation*, C.D. Cal. 2013 WL 1953707 .................... 6, 14

*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) .................................... 6

## **<u>STATUTES</u>**

Cal. Gov't Code § 12940 ................................................................... 5

Cal. Labor Code § 1102.5 ................................................................. 5

Fed. R. Civ. P. 12(b)(6) .................................................................... 1

Fed. R. Civ. Pro. 12(f) .................................................................... 14

Labor Code §§ 3600 ........................................................................ 7

1462781

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants, Natural Products Association ("NPA") and Daniel Fabricant ("Fabricant") (collectively referred to as "Defendants"), move to dismiss the intentional infliction of emotional distress claim of the complaint filed by plaintiff, Brent Weickert ("Weickert"). Not only is the claim preempted by state labor law, the complaint fails to state a claim. Labor law also preempts the negligent hiring and retention claim. The complaint also fails to state a claim for hostile work environment. Finally, Defendants further move pursuant to Fed. R. Civ. P. 12(f) to strike paragraph 14 of the complaint.

## BACKGROUND

On December 7, 2015, Weickert filed a complaint against the Defendants in Superior Court of San Luis Obispo County. The Defendants were served on December 9. They timely removed the case to this Court on December 23. *See* Dkt. No. 1. On a motion to dismiss for failure to state a claim, the factual allegations in the complaint are treated as true and reasonable inferences to be drawn in favor of the non-moving party. *See, e.g.,   Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994); *Lewis v. Ollison*, 571 F.Supp.2d 1162, 1169 (C.D. Cal. 2008) ("Allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party").

NPA is an Illinois not-for-profit corporation. Complaint (Dkt. No. 1-1) ¶ 3. Founded in 1936, NPA is the nation's largest and oldest nonprofit organization dedicated to the natural products industry. NPA represents over 1,900 members accounting for more than 10,000 retail, manufacturing, wholesale, and distribution locations of natural products, including foods, dietary supplements, and health/beauty aids. NPA unites a diverse membership, from the smallest health food store to the largest dietary supplement manufacturer. NPA's headquarters is in Washington, D.C. *See* Dkt. No. 1-3, Declaration of Daniel Fabricant ("Fabricant Decl.") ¶ 3.

1

Fabricant is the association's Executive Director and Chief Executive Officer and a citizen of the District of Columbia. Fabricant previously served as the Director of the Division of Dietary Supplement Programs at the U.S. Food and Drug Administration, where he directed agency policy, public affairs and regulatory action regarding regulation of the dietary supplement industry for more than three years. Prior to the FDA, Fabricant was Vice President for global government and scientific affairs for NPA. He has a Ph.D. in Pharmacognosy from the University of Illinois at Chicago. *Id.* ¶ 2. He has also published extensively and is internationally recognized for his regulatory and governmental public health expertise and natural products research.

Weickert alleges that he was employed by NPA from 1997 until October 15, 2015 as Senior Vice President and Chief Financial Officer. He also performed some human resource duties. *Id.* ¶ 2. Even though NPA's offices were in Washington, D.C., he worked out of his house in California.

The complaint alleges that while employed by NPA, Weickert discovered that Fabricant had engaged in supposed prohibited, unethical or illegal behavior. He wrote a letter to NPA's President in May 2015 alleging that:

    a.    Fabricant was going to strip clubs and charging these expenses on the company credit card. He showed pictures taken at a strip club to a female NPA employee.

    b.    Fabricant would take another male employee out and charge food and beverages to NPA's credit card.

    c.    Fabricant's drinking had become excessive and caused other employees to comment on his behavior.

    d.    Fabricant regularly used profanity, sexual innuendo, and made sexual jokes at work.

    e.    Fabricant mocked an employee who is a devout Catholic for using rosary beads to help her with her fear of flying.

f.   Weickert "heard" that Fabricant's behavior at his prior employer had led to numerous lawsuits.

g.   Employees were terminated when they complained about Fabricant's abusive behavior.

h.   Fabricant's abusive behavior had driven away multiple female employees and that a female employee had called Weickert to complain about his abusive and hostile behavior.

i.   Fabricant "insisted" that women in the office wear skirts and high heels.

j.   Fabricant directed several employees not to complete timesheets even though recording these employees' work time was required by law.

l.   A NPA employee was out with three other NPA employees. She took an Uber car from the event and was later allegedly sexually assaulted. The alleged assault was not committed by anyone associated with NPA.

*Id.* ¶¶ 11-12, 14. As discussed further below, none of these alleged facts pertain to Weickert or were directed at him.

Weickert goes on to allege that Fabricant reprimanded Weickert for reminding employees about holidays provided by NPA. When Plaintiff complained to Fabricant about his behavior, he was purported reprimanded for doing his job, excluded from important communications, told not to communicate with NPA's officers directors, committee chairs, and accountants, and was left out of hiring and firing decisions. *Id.* ¶¶ 11-12(j), (l).

Further, Weickert alleges that he told NPA's Board of Directors that Fabricant had completely cut off communications to him and NPA employee Adam Finney. Weickert allegedly advised the Board that Fabricant's behavior towards him constituted retaliation. He reported that Fabricant was taking actions that appeared intended to make Plaintiff look like he was not doing his job. *Id.* ¶ 15.

NPA's President advised Weickert that there would be an internal

3

1462781

investigation of his allegations. *Id*. ¶ 16. NPA's then-outside counsel conducted a thorough investigation and briefed the Board and Executive Committee of the Association.[1] Under NPA's binding Policies and Procedures (§ 13(a)), only the Executive Committee has the power to hire or terminate the CEO. (Ex. 1). The Executive Committee has not sought to terminate Fabricant's position at NPA.

Weickert goes on to allege that he was terminated on October 15, 2015. While he asserts that no reason was given for the termination, he believes he was terminated because of his complaint to NPA's President. *Id*. ¶ 19. Contrary to Weickert's suggestion, he was not terminated in retaliation for reporting alleged unethical behavior to the Board of Directors. Weickert was an at will employee. NPA properly terminated Weickert's employment for at least the following reasons summarized below:

1.      Weickert was paid base compensation of about $170,000 per year. NPA is a relatively small trade association and has been exploring ways to reduce its costs to meet a budget shortfall. NPA's Executive Committee determined that it would be much cheaper for NPA to outsource the functions Weickert performed as a full time employee. NPA has implemented the cost saving outsourcing. The Executive Committee was also concerned that NPA and its staff is located in Washington, D.C. and Weickert worked out of his home in California, which was not necessarily efficient or prudent from a control and reporting standpoint.

2.      Prior to his termination, NPA learned that Weickert engaged in financial improprieties while an employee of NPA. He used NPA credit card reward points for his personal benefit, including the purchase of an expensive telescope and a camera. On October 15, 2015, he admitted

---

[1] Such briefing is protected from disclosure by the attorney-client privilege.

1462781

he did so without authorization. NPA determined that it could not continue to employ a person as chief financial officer who abused his position for improper personal benefit.

3. In addition, prior to his termination, there were issues with Weickert's performance of his job responsibilities. By way of example, communications with NPA's auditors revealed that he was unable to account for a significant variance in the general ledger. In addition, Weickert had poor relationships with other NPA employees, including the director of operations.

4. Further, prior to his termination, Weickert communicated internal NPA data and information to certain members of the board of directors outside the normal reporting channels and beyond the scope of his authority. NPA determined that it could not continue to employ a person who acted outside the scope of his authority. We would note that evidence uncovered after his termination, including Weickert's emails sent and stored on an NPA computer corroborate the fact that he acted improperly.

Thus, Weickert's suggestion that he was terminated for retaliatory reasons is without factual support and baseless.

Weickert's complaint alleges nine causes of action against NPA or Fabricant personally. These are: (1) wrongful termination in violation of public policy against NPA; (2) retaliation in violation of the Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code § 12940, *et seq.*) against NPA; (3) religious and sexual harassment/hostile work environment in violation of FEHA against NPA and Fabricant; (4) failure to prevent discrimination, harassment and retaliation in violation of FEHA against NPA; (5) negligent hiring and retention of Fabricant by NPA; (6) violation of Cal. Labor Code § 1102.5 against NPA; (7) intentional infliction of emotional distress against NPA and Fabricant; (8) failure to pay vested

1462781

vacation time upon termination against NPA; and (9) waiting time penalties against NPA.

## **ARGUMENT**

"The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Shinde*, 2013 WL 1953707, *4 (quoting *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)). A plaintiff must allege more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)  Federal pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), apply in a case removed from state court. *See, e.g.*, *Jimena v. Standish*, 504 Fed. Appx. 632, 634, 2013 WL 223131, *1 (9th Cir. Jan. 17, 2013).

## I.  WEICKERT'S COMPLAINT DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

While none of the claims in the complaint have merit, the claim for intentional infliction of emotional distress does not state a claim and should be dismissed against NPA and Fabricant as a matter of law. The seventh cause of action asserts that "Fabricant's conduct towards Plaintiff was outrageous, as it involved the violation of numerous California employment laws and a complete disregard for Plaintiff's rights." Complaint ¶ 63. Weickert's allegation that he "suffered severe and emotional distress as a result of Fabricant's conduct" (*id*. ¶ 65) is conclusory and he pleads no actual facts as to what emotional distress he allegedly suffered. The complaint further alleges that Fabricant's conduct was **a** substantial factor in causing Weickert distress. *Id*. ¶ 66 (emphasis added). The complaint fails to allege what other facts caused Weickert's emotional distress.

Weickert's claim for infliction of emotional distress is preempted by the

6

1462781

exclusivity provisions of the California Worker's Compensation Act ("CWA"). "The CWA provides the exclusive remedy for injuries arising out of and during the course of one's employment." *Nidds v. Schindler Elevator Corp.*, 1994 WL 675719, *8 (N.D. Cal. Nov. 17, 1994); *see also* Labor Code §§ 3600 *et seq.*; *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 747, 754, 7 Cal. Rptr. 2d 808, 815 (1992) ("We hold that claims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law, notwithstanding the absence of any compensable physical disability."); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 233 Cal. Rptr. 308, 729 P.2d 743 (1987) (claims for intentional infliction of emotional distress arising from an employment relationship are barred by the exclusivity provisions of the WCA); *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 712-14, 30 Cal. Rptr. 2d 18, 872 P.2d 559 (1994) (accord). The complaint is based on conduct that occurred during Weickert's employment with NPA. *See, e.g.*, Complaint ¶¶ 2, 11, 12-19. Thus, the claim should be dismissed as a matter of law.

The conduct alleged by Weickert as the basis for his emotional distress claim was conduct that was within the normal course of the employment relationship, and thus, barred by the exclusivity provisions of the WCA. Weickert alleged he suffered emotional distress as a result of that Fabricant's "harassment of Plaintiff and numerous other employees." Complaint ¶ 67. "Some harassment by superiors when there is a clash of personality or values is not uncommon." (*Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 161 (1987) (holding plaintiff's intentional infliction of emotional distress based on supervisor's conduct was barred by workers' compensation exclusivity rule).) An emotional distress claim based on such harassment is barred by WCA exclusivity rules. Weickert also alleged that he suffered emotional distress as a result of NPA not "taking Plaintiff's complaints seriously and taking action against Fabricant." Complaint ¶ 70. This alleged conduct is clearly within the normal part of the employment relationship in that the conduct

7

involved was Weickert's grievance toward Fabricant. "[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Cole,* 43 Cal.3d at 160.)  *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876 (holding plaintiff's emotional distress claim based on whistleblower retaliation claim is barred by workers' compensation exclusivity rule).

Assuming *arguendo* the claim is not preempted, it still fails. A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See, e.g., Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993); *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Liability for the tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1252 (1988) (citing RESTATEMENT (SECOND) OF TORTS § 46 comm. d), overruled on other grounds by *Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826 (2001).

This claim against the Defendants should be dismissed because the "oppressive" acts were allegedly directed to others, not Weickert. "[T]he intentional infliction cause of action requires a showing of 'extreme and outrageous conduct' which is **directed at the plaintiff**." *Potter*, 6 Cal. 4th at 1002, 1003; *see also Christensen*, 54 Cal. 3d at 903 ("It is not enough that the conduct be intentional and

8

1   outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a

2   plaintiff of whom the defendant is aware."). Weickert's complaint as directed at

3   Fabricant's alleged conduct to other people, not Weickert. *See* Complaint ¶¶ 12-15,

4   17. Weickert does not allege that Fabricant's conduct described in the complaint was

5   primarily directed at Weickert.

6      The claim should be dismissed for another reason. Weickert alleged that

7   Fabricant's conduct was "**a** substantial factor" in causing his severe emotional

8   distress. Complaint ¶ 66 (emphasis added).The complaint is silent as to what other

9   factors contributed to the alleged emotional distress. Further, Weickert pled no facts

10  describing the nature and extent of his distress. "Severe emotional distress means

11  'emotional distress of such substantial quality or enduring quality that no reasonable

12  [person] in civilized society should be expected to endure it.'" *Potter*, 6 Cal. 4th at

13  1004 (quoting *Girard v. Ball*, 125 Cal. App. 3d 772, 787-88 (1981)). The complaint

14  is utterly silent as to the nature and scope of the alleged distress. Nor is there any

15  indication that Weickert sought medical treatment for his condition. *See, e.g*.,

16  *Girard*, 125 Cal. App. 3d at 788. As such, the claim should be dismissed.

17     Finally, Weickert goes on to allege that Fabricant reprimanded Weickert for

18  reminding employees about holidays provided by NPA, reprimanded for doing his

19  job, excluded from important communications, told not to communicate with NPA's

20  officers directors, committee chairs, and accountants, and was left out of hiring and

21  firing decisions. *Id*. ¶¶ 12(j), (l). These acts, even assuming that they are true (as we

22  must for this motion), do not rise to the level of intentional infliction of emotional

23  distress. The cause of action requires a showing of "extreme and outrageous

24  conduct" directed at the plaintiff. *Potter*, 6 Cal. 4th at 1003. It also requires "severe

25  or extreme emotional distress", which means distress of such substantial or enduring

26  quality that no reasonable person in civilized society should be expected to endure

27  it. *Id*. at 1004.

28     Acts that occur in the workplace – such as being reprimanded by a superior,

9

excluded from important communications, told not to communicate with others, and being left out of hiring and firing decisions – do not rise to the level of intentional interference. They may be irritating but the law does not permit recovery. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute intentional interference. *Molko*, 46 Cal. 3d at 1251. Neither NPA nor Fabricant engaged in "extreme and outrageous conduct" directed at Weickert. The motion to dismiss the intentional interference claim should be granted.

## II.   <u>WEICKERT'S NEGLIGENT HIRING AND RETENTION CLAIM IS ALSO PREEMPTED BY CALIFORNIA LABOR LAW.</u>

Weickert's fifth cause of action for negligent hiring and retention is also barred by the exclusivity provisions of the CWA. In *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 18 Cal. Rptr. 2d 692 (1993), the Court found that "any claim for mere negligence by Coit would be barred here by the workers' compensation laws, since Seahorn was the employee of Coit and may not sue for its allegedly negligent or improper supervision." *Id*. at 1606, citing *Cole*, 45 Cal. 3d at 161; *see also Bush v. Trendwest Resorts, Inc.*, 2001 WL 1469062, *9 (Cal. Ct. App. Nov. 19, 2001) (terminated employee's claim against employer for negligent hiring and retention was barred under the workers' compensation exclusivity rule). Weickert's complaint alleges that NPA negligently hired Fabricant, the Director of FDA's Division of Dietary Supplement Programs, in 2014, and retained him in 2015. Complaint ¶¶ 52-55. Notably, Weickert alleges that NPA "owed a duty to its employees to ensure that any employee hired would not harm the interests of NPA as a whole, or the rights of individual employees. NPA breached this duty…." *Id*. ¶ 55. As a result, Weickert claims he was injured by the alleged negligence. *Id*. ¶ 56.

The fifth cause of action falls squarely within the rule that a current or former employee's claim for negligent hiring and retention is barred by the WCA's exclusivity provisions. Thus, Weickert's claim should be dismissed.

1462781

### III.    WEICKERT'S COMPLAINT DOES NOT STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT.

Weickert's third cause of action – for hostile work environment in violation of FEHA – should be dismissed for failure to state a claim. He does not assert that he was harassed because of his sex or religion. Weickert was not the direct victim of the alleged harassment and did not allege that it occurred in his immediate work environment. Nor did Weickert plead a pattern of a pattern of continuous, pervasive harassment. His complaint lacks specifics of alleged religious/sexual harassment incidents, frequency, and severity.

"There is no requirement that a plaintiff alleging such conduct be the direct target of the harassment; however, 'sexual conduct that involves or is aimed at persons other than the plaintiff is considered less offensive and severe than conduct that is directed at the plaintiff.'" *McCoy v. Pacific Maritime Assn.*, 216 Cal. App. 4th 283, 293, 158 Cal. Rptr. 851 (2013) (quoting *Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264, 284-85, 42 Cal. Rptr. 3d 2, 132 P.3d 211 (2006)). In such cases, it is necessary "to establish that the sexually harassing conduct permeated the plaintiff's direct work environment." *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 611 262 Cal. Rptr. 842 (1989). "However, one who is not personally subjected to such remarks or touchings, must establish that she personally witnessed the harassing conduct and that it was in her immediate work environment." *Id*. at 611. The appellate court went on to find that:

> For instance, it is not enough to allege that harassment occurred in the hospital; a plaintiff who is not a direct victim must also allege exactly what occurred in her presence in her immediate work environment and describe that work environment. In other words, if Ms. Fisher knew that Dr. Tischler was harassing nurses when he was in the operating room, but she did not work with him in that operating room, she would not have been exposed to a hostile work environment.

11

1462781

1  *Id*. Further, a plaintiff did not suffer from a hostile work environment unless she was

2  actually exposed to it:

3     Ms. Fisher could not have suffered from working in a hostile

4     environment unless she was personally exposed to it. It is not

5     sufficient to plead that a pattern of sexual harassment existed at SPPH.

6     Ms. Fisher, being percipient, should have been able, and was properly

7     required by the law and motion judge, to allege sufficient facts to

8     establish that her work environment was permeated by sexual

9     harassment.

10  *Id*. at 613; *see also Bush*, 2001 WL 1469062, *10 ("harassing conduct occurring

11  outside the plaintiff's presence does not establish a hostile work environment. A

12  plaintiff who merely hears about sexually harassing conduct towards others has not

13  been exposed to a hostile work environment. A plaintiff must show that *his or her*

14  *work environment* was permeated by sexual harassment.") (citations omitted,

15  emphasis in original).

16     Weickert's complaint simply does not allege facts required to support the

17  hostile work environment claim against NPA or Fabricant. To the contrary,

18  Weickert alleges that "**co-workers** were subjected to discriminatory and harassing

19  remarks on account of their protected characteristics. One co-worker was subjected

20  to religious harassment while numerous employees were subjected to gender

21  discrimination and sexual harassment." Complaint ¶ 39 (emphasis added). Weickert

22  does not allege that he was the victim of any harassment or that any of the alleged

23  statements to his co-workers occurred in his physical presence. Instead, he "hear[d]

24  complaints of this conduct…." *Id*. ¶ 44. While Weickert alleges that "Fabricant

25  harassed employees in front of Plaintiff" (*id*. ¶ 45), his pleading is devoid of any

26  facts supporting the allegation. The allegations he made against Fabricant do not say

27  that he personally witnessed improper conduct that would support a hostile work

28  environment claim. *Id*. ¶¶ 12(a), (d), (e), (g)-(i), 14. Nowhere in this list does

1462781

Weickert say that he personally experience or witnessed such behavior. He does not allege that he was ever at a strip club with Fabricant or witnessed him showing photographs to employees. *Id*. ¶ 12(a). He does not allege that he personally observed Fabricant: (1) using profanity, sexual innuendo, or sexual jokes; (2) mocking a Catholic employee; (3) terminating employees for complaints about behavior; or (4) insisting that female employees dress in a certain way. *Id*. ¶ 12(d), (e), (g) (i). Other allegations confirm that Weickert did not personally observe the alleged behavior, but were based on pure hearsay. *See id*. ¶¶ 12(h) ("a female employee had recently called [Weickert] sobbing to complaint about [Fabricant's] abusive and hostile behavior."); 13 ("In the May 2015 letter, Plaintiff provided [NPA President] Green with the contact information of **female witnesses** who could discuss **the experiences they had** with Fabricant" (emphasis added); 14 ("Plaintiff gained knowledge about this incident through a co-worker"). Such rank hearsay does not support Weickert's claim for relief.

Further, Weickert admits that he worked in California. *Id*. ¶ 2. Fabricant and other NPA employees work in the District of Columbia. Fabricant Decl. ¶ 3. This fact is consistent with Weickert's inability to plead any facts showing he was the victim of or witnessed acts of harassment. As in *Fisher*, even assuming that Weickert knew that Fabricant was harassing other NPA employees, he did not work with Fabricant in that DC office and he would not have been exposed to a hostile work environment. It is not sufficient to plead that a pattern of sexual or religious harassment existed at NPA. Weickert should have been able, and was properly required by law, to allege sufficient facts to establish that his work environment was permeated by harassment. *Fisher*, 214 Cal. App. 3d at 611, 613. He did not meet that test.

Therefore, Weickert's cause of action for hostile work environment fails to state a claim under Rule 12(b)(6) and dismissal is warranted.

13

1462781

## IV.   PARAGRAPH 14 OF THE COMPLAINT SHOULD BE STRICKEN UNDER RULE 12(F).

Fed. R. Civ. Pro. 12(f) provides, in relevant part, that: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In *Shinde*, 2013 WL 1953707, *2, the Court summarized that:

> "Immaterial" matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question….. "Scandalous" allegations include those "that cast a cruelly derogatory light on a party or other person."

*Id*. at *2 (citations omitted).

Paragraph 14 of the complaint should be stricken. It alleges that an NPA employee was sexually assaulted "while out for the night with Fabricant." Not only is the allegation untrue, it is based on rank double hearsay. This paragraph is the very definition of immaterial, impertinent, or scandalous matter.

The paragraph should be stricken for another reason. Persons who are familiar with NPA could deduce the identity of the employee. Her privacy interests support striking the allegations.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

Dated: January 21, 2016          Respectfully submitted,

                        Cummins and White LLP

                        By:  /s/ Iman Reza
                             Iman Reza
                        Attorneys for Defendants Natural Products
                        Association and Daniel Fabricant

14

Of Counsel:

Richard J Oparil
rjoparil@pbnlaw.com

Porzio, Bromberg & Newman P.C.
1200 New Hampshire Ave. NW, Suite 710
Washington, DC 20036
Tel: 202-517-1888
Fax: 202-517-6322

|U894.1|1467801.DOCX;1|

15

1462781

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF VENTURA

      I am employed in the County of Ventura, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  760 Paseo Camarillo, Suite 300, Camarillo, California  93010.

      On January 21, 2016, I served the foregoing document described as **NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND TO STRIKE** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☑     **BY EMAIL**

      Based on a court order or an agreement between the parties to accept service by email or electronic transmission, I caused the above document(s) to be sent by the United States District Court's electronic notification service to the parties at the email addresses listed above.  The transmission was reported as complete and without error.

☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☑ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on January 21, 2016, at Camarillo, California.

 

_____
      CATHY KASTER

16

1462781

**SERVICE LIST**

| | |
|---|---|
| Kathleen M. Hartman<br>Suren N. Weerasuriya<br>Callahan, Thompson, Sherman &<br>Caudill, LLP<br>2601 Main Street, Suite 800<br>Irvine, CA  92614 | *Attorneys for Plaintiffs*<br><br>Tel.:  (949) 261-2872<br>Fax:  (949) 261-6060<br>Email: khartman@ctsclaw.com<br>　　　　sweerasuriya@ctsclaw.com |
| Iman Reza<br>Cummins & White, LLP<br>2424 S.E. Bristol, Suite 300<br>Newport Beach, CA 92660-0764 | *Co-Counsel for Defendants Natural Products Association and Daniel Fabricant*<br><br>Tel: 949-852-1800<br>Fax: 949-852-8510<br>Email: ireza@cwlawyers.com |
| Richard J. Oparil<br>Porzio, Bromberg & Newman, P.C.<br>1200 New Hampshire Avenue NW<br>Suite 710<br>Washington, D.C.  20036-6802 | *Co-Counsel for Defendants Natural Products Association and Daniel Fabricant*<br><br>Tel:  (202) 517-6323<br>Fax: (202) 517-6322<br>Email:  rjoparil@pbnlaw.com |

1462781

17